FILED

2008 Jun-30  AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BELINDA BANKS O/B/O,** | ) | |
| **L.J.B.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:06-CV-1709-KOB** |
| **MICHAEL J. ASTRUE** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

The Claimant's mother, Belinda Banks, filed applications on behalf of Claimant,

Lewauna J. Brock, for childhood Social Security Income on March 24, 2004, alleging disability

commencing on March 18, 2004 caused by attention deficit hyperactivity disorder ("ADHD")

and a learning disability in reading comprehension.  The Commissioner denied the claims.  The

Claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  The

ALJ held a hearing on October 20, 2005.  In a decision dated January 21, 2006, the ALJ found

that the Claimant was not disabled within the meaning of the Social Security Act, and, therefore,

was not eligible for childhood Social Security Income.  On June 30, 2006, the Appeals Council

denied the Claimant's request for review.  The Claimant exhausted her administrative remedies,

and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Based on a thorough

review of the record and the parties' briefs, this court concludes that the decision of the

Commissioner shall be AFFIRMED.

## II. LEGAL STANDARD

When evaluating the disability of minors, the regulations prescribe a three-step process. *See* 20 C.F.R. § 416.924a; *Wilson v. Apfel*, 179 F.3d 1276, 1277 n. 1 (11th Cir. 1999). As set forth in the regulations, the Claimant must show: (1) that she was not working; (2) that she has a "severe" impairment or combination of impairments; and (3) that her impairments meet or equal the severity of an impairment in the listings. The first step requires a determination of whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled and the evaluation stops. If not, the Commissioner next considers the effect of all of the physical and mental impairments combined. If the claimant's impairments are not severe, the analysis stops. Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet, equal, or are functionally equivalent to the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*. If the claimant's impairments result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, they are functionally equivalent to a listing. *See* 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Wilson*, 179 F.3d at 1277 n. 1. The regulations require the ALJ to consider the following six domains of functioning: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. *Wilson*, 179 F.3d at 1277 n. 1. If the claimant's impairments meet or are functionally equivalent to a listing, she is disabled. *Id*.

## III. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow

one.  The scope of review is limited to determining (1) whether substantial evidence in the record as a whole supports the findings of the Commissioner, and (2) whether the Commissioner applied the correct legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*

Indeed, even if this court disagrees with the Commissioner's findings, the court must affirm if substantial evidence supports the findings.  *See Miles*, 84 F.3d at 1400.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

In cases where the claimant introduces new evidence subsequent to the ALJ's determination, this court determines *de novo* whether to remand the case for consideration of the

3

additional evidence.  *Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986) (citing *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir. 1985)).

**IV. ISSUE PRESENTED**

In this appeal, the Claimant alleges that the ALJ's decision was not supported by substantial evidence and, therefore, the ALJ applied improper legal standards.  The Claimant further argues that the ALJ's decision lacked substantial evidence by not considering the new evidence presented to the Appeals Council.[1]

**V.  FACTS**

Claimant was eleven years old at the time of the administrative hearing on October 20, 2005.  (R. 195).  According to the Claimant, she became disabled on March 18, 2004 due to attention deficit hyperactivity disorder ("ADHD") and a learning disability in reading comprehension.  (R. 15).  During the hearing, the claimant was in the fifth grade at Abrams Elementary and special education classes for emotional and behavioral problems.  (R. 190, 195). The record contains medical evidence, a teacher questionnaire, and testimony that the ALJ referenced in making his decision.  (R. 14-16).

Dr. Tom Edwards, Claimant's primary pediatrician, diagnosed the Claimant with attention deficit disorder ("ADD") along with some hyperactivity on October 6, 2003 and placed her on Adderall.  (R. 155).  Claimant's mother complained to Dr. Edwards that the Adderall made the Claimant act "like a zombie."  (R. 203).  On February 16, 2004, Dr. Edwards removed Claimant from Adderall and noted that she was doing "much better" without the medication.  (R.

---

[1] This court notes that the Claimant did not argue that the Appeals Council erred in denying review based on the new evidence submitted.

97).

At Pediatrics West, Claimant was diagnosed with ADHD on August 29, 2005 based on the Claimant's manifestation of symptoms for inattention and hyperactivity. (R. 166). The symptoms for inattention included poor attention to details; poor attention span; poor listening skills; inability to follow through; difficulty organizing tasks; poor sustained mental effort; frequent loss of things; easy distraction; and forgetfulness. (R. 163). The symptoms for hyperactivity/impulsivity included fidgeting; leaving her seat when she should not; running about excessively; difficulty playing quietly; acting as if "driven by a motor;" talking excessively; blurting out; difficulty awaiting turn; and interrupting others. (R. 163). After the diagnosis for ADHD, Claimant was prescribed Metadate. (R. 166). The record reflects that on the October 7, 2005 follow-up visit, the Claimant improved in all areas but still needed some attention in most of the areas. (R. 163). At Pediatrics West, Claimant received a stronger dosage of Metadate during the October 7, 2005 visit. (R. 164).

Ms. DeAndrea Dent, the Claimant's third grade teacher, completed a Teacher Questionnaire on April 19, 2004. (R. 106-16). In the questionnaire, Ms. Dent stated that the Claimant functioned the same as any other child of the same age. (R. 108). She also noted no problems in the following areas: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; and caring for herself. (R. 106-16). Ms. Dent further noted that the Claimant "works well independently and in whole groups." (R. 110). Lastly, Ms. Dent commented that the Claimant was "a good student." (R. 116).

Along with the Teacher Questionnaire, the ALJ considered a Childhood Disability

5

Evaluation filled out by Kenneth Warren Ph.D., a State Agency psychological consultant, on May 3, 2004.  (R. 129-35).  Dr. Warren relied upon Ms. Dent's questionnaire and Dr. Edwards' medical reports to determine that the Claimant's condition was not severe.  (R. 129).  In his comments at the end of the evaluation, Dr. Warren mentioned Dr. Edwards' notes which stated that the Claimant was doing much better since she was taken off of Adderall.  (R. 135).  Finally, the evaluation listed the Claimant's diagnosis from October 2003, but mentioned that her symptoms were well controlled even without medication.  (R. 135).

Lastly, the ALJ relied on the testimony of the mother and child at the October 20, 2005 hearing to determine the severity of the Claimant's impairment.  The Claimant's mother testified that the Claimant had an appointment scheduled for counseling on November 29, 2005.  (R.195-96).  The ALJ asked the mother about the Claimant's ability to acquire and use information, to which the mother responded that the Claimant does "well sometimes as far as with learning things," but mentioned that she sometimes forgets concepts a couple of weeks after learning them.  (R. 196-97).  The ALJ also addressed the Claimant's ability to attend to and complete tasks, about which the mother stated that the Claimant can focus better when on medication; Claimant's mother noticed a big difference since the doctor increased her medication.  (R. 197). The Claimant herself testified that she does "pretty well" in school, has a best friend, and enjoys spelling, language and math.  (R. 191).  The Claimant also mentioned at the hearing that she does her homework when she gets home from school and then plays outside.  (R. 192).

The ALJ found that the Claimant did not engage in substantial gainful activity during any part of the period under adjudication.  (R. 15).  The ALJ determined that the Claimant does not have an impairment or combination of impairments that causes more than minimal functional

6

limitations; therefore, the child does not have an impairment or combination of impairments that is "severe" under 20 C.F.R. § 416.924(c). (R. 16). Ultimately, the ALJ found that the Claimant did not suffer from a "disability" as that term is defined in the Social Security Act at any time through the date of the ALJ's decision. (R. 16).

Subsequent to the hearing, the Claimant had an appointment for counseling at the University of Alabama at Birmingham's Sparks Clinic on November 29, 2005. (R. 195-96). The Sparks Clinic assessment evaluated the Claimant's behavioral and academic difficulties. (R. 172). The evaluators were Bart Hodgens, Ph.D., a licensed psychologist, and Dr. Snehal Khatri, a pediatrician. (R. 172). The evaluators noted that the Claimant was "cooperative, friendly, and appropriately talkative during testing." (R. 172). They also noted that Claimant "worked hard even on difficult tasks and occasionally asked for clarification of directions before beginning a task." (R. 172).

The Sparks Clinic conducted cognitive screening with the Peabody Picture Vocabulary Test, a measure of receptive language that correlates moderately with more general measures of ability. The result classified the Claimant as "extremely low" with an age equivalence of six years, eight months. (R. 172). Additional screening of Claimant's expressive language abilities with the Vocabulary subtest of the Wechsler Intelligence Scale for Children ranked Claimant in the age equivalence of seven years, six months. (R. 173). Claimant's visual-motor skills were also classified as "low." (R. 173). During academic screening, on the other hand, the Claimant demonstrated average reading, math, and spelling skills in comparison to other children her age. (R. 173). The assessment concluded that Claimant's "overall achievement is commensurate with her current age, grade level, and estimated cognitive ability but her language abilities may be

lower than expected for her age." (R. 173).  The evaluators observed no clear evidence for the
Claimant's previous diagnosis of ADHD but recommended a more comprehensive evaluation to
determine the extent to which attention and learning difficulties impact Claimant's current
academic performance.  (R. 173).  The Claimant sent the Sparks Clinic Assessment to the
Appeals Council on May 30, 2006.  (R. 184).

On June 30, 2006, the Appeals Council received the documentation from the Sparks
Clinic and made that document part of the record.  (R. 6).  After receipt of the additional
documentation, the Appeals Council denied the Claimant's request for review.  (R. 3).  When the
Appeals Council denied Claimant's request for review, the decision of the Commissioner became
final.  (R. 3).  Because Claimant exhausted her administrative remedies, this court has
jurisdiction for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## VI. DISCUSSION

The Claimant asserted that her school and medical records indicate that she has a
"severe" impairment, or more than a "slight abnormality," such that the ALJ should have moved
on to step three to evaluate Claimant's functional deficits.  The Claimant further contended that
she has a "marked" impairment in acquiring and using information and a "marked" impairment
in attending and completing tasks, such that she would be found "disabled" pursuant to the child
Regulations at 20 C.F.R. § 416.926a.  Thus, the resolution of this appeal focuses on whether
substantial evidence supports the ALJ's determination that the Claimant's ADHD was not severe
and whether this court should review the additional documentation from the Sparks Clinic
provided to the Appeals Council.

The ALJ based his decision in this case on the second step of the three-step evaluation

process, at which he determined that Claimant's impairment was not severe.  The regulations state that a severe impairment is more than a "slight abnormality or a combination of slight abnormalities" that causes "no more than minimal functional limitations."  20 C.F.R. § 416.924(c).  The Eleventh Circuit Court of Appeals has held that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf.* 20 C.F.R. § 404.1521(a).  The Eleventh Circuit also established that "the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In this case, substantial evidence in the record as a whole supports the ALJ's determination that Claimant did not have a severe impairment.  The record reflects that the Claimant has the medically determinable impairment of ADHD.  The ALJ specifically listed each item of evidence that led to his decision finding the Claimant not disabled.  Not only did the ALJ make his decision based on the medical records, but he also used the Teacher Questionnaire, State Agency psychological consultant evaluation, and the testimony of both the mother and child from the hearing.

Specifically, the ALJ referred to the teacher's questionnaire, in which she reported the Claimant functioned the same as other children her age.  Ms. Dent further noted that the Claimant "works well independently and in whole groups."  The ALJ found no functional limitations for the Claimant based on Ms. Dent's questionnaire, which supports his finding that

9

the Claimant's disability is not severe.

The ALJ also referred to the Childhood Disability Evaluation to determine the severity of the Claimant's impairment. The consultant viewed Ms. Dent's questionnaire and Dr. Edwards' medical reports to establish that the Claimant's impairment was not severe. The evaluation focused on the fact that Claimant was removed from Adderall and that her symptoms were well controlled even without the medication.

Lastly, the ALJ referred to the testimony of the Claimant and her mother to determine the severity of the Claimant's impairment. The mother testified that the Claimant can focus better when on her new medication, Metadate; Claimant's mother noted a "big difference" since the doctor increased her medication. Furthermore, at the hearing, the Claimant herself testified that she enjoys school, has friends, and completes her homework when she gets home from school. Based on this testimony and the evidence discussed above, the ALJ determined that the Claimant has only a slight abnormality or a combination of slight abnormalities, which have no more than a minimal effect on the child's functioning. This substantial evidence supports the ALJ's conclusion.

The Claimant next argues that the ALJ's decision is not based on substantial evidence because of the additional document, the Sparks Clinic assessment, that Claimant provided subsequent to the ALJ's decision. The Sparks Clinic report was not available during the hearing and was sent to the Appeals Council after Claimant's initial denial. Upon the Appeals Council's denial for review, the Claimant requested that her case be remanded for a full and proper consideration of the Sparks Clinic assessment.

The law in this Circuit requires a reviewing court "look only to the evidence actually

10

presented to the ALJ in determining whether the ALJ's decision was supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Thus, "when a claimant challenges the administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, [the court] need not consider evidence submitted to the Appeals Council." *Ingram v. Astrue*, 496 F.3d 1253, 1266 (11th Cir. 2007). The Claimant in this case challenged only the ALJ's decision based on substantial evidence and never presented an argument regarding the Appeals Council. Accordingly, Claimant's claim against the ALJ regarding the additional evidence cannot be considered by this court. If the ALJ's decision is to be reviewed, it must be reviewed only with respect to the evidence available to the ALJ at the time of his determination.

On the other hand, this court has the power to review whether to remand this case on the basis of the Sparks Clinic assessment if properly argued by the Claimant. *See Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986) (citing *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir. 1985)). Under 42 U.S.C. § 405(g), courts can "remand a case to the Social Security Administration for consideration of newly discovered evidence." *Falge*, 150 F.3d at 1323 (citing *Cannon v. Bowen*, 858 F.2d 1541 (11th Cir. 1988)). For Claimant's contention to be successful, she must establish that (1) the evidence is new and noncumulative; (2) the evidence is "material" – *i.e.*, relevant and probative so that a reasonable possibility exists that the administrative result would change; and (3) good cause exists for the failure to submit the evidence at the administrative level. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)). However, in the present case, the Claimant never argued that the new evidence fits these three requirements for remand.

11

Assuming Claimant did make this argument, however, this court finds no substantive data within the assessment to create a reasonable possibility that the administrative result would change. The assessment acknowledged that Claimant's "overall achievement is commensurate with her current age, grade level, and estimated cognitive ability but her language abilities may be lower than expected for her age." (R. 173). However, the assessment never determined what impact Claimant's language difficulties had on her academic performance and overall functioning. (R. 174). At most, the evaluation mentioned a recommendation that the Claimant receive a more comprehensive evaluation to determine any functional deficits that might be caused or altered by her disorder. (R. 174). Therefore, the new evidence presented is not enough to sway this court to remand for additional consideration of this evidence.

In conclusion, the ALJ's determination that the Claimant's impairment of ADHD was not severe is supported by substantial evidence. The evidence included in the record reflects only a slight abnormality, which has no more than a minimal effect on the child's functioning. This court cannot address the additional documentation from the Sparks Clinic because the Claimant did not properly argue for remand based on the new evidence presented to the Appeals Council. This court further notes that even if the Claimant did properly present an argument for consideration of the new evidence, this court is not swayed by the assessment because it does not explicitly state any deficits or limitations that ADHD might have on the Claimant's academic or overall functioning.

## VI. CONCLUSION

Upon review of the administrative record, and considering all of Claimant's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord

12

with the applicable law.  Therefore, the Commissioner's decision will be AFFIRMED.

The court will enter a separate order consistent with this memorandum opinion.

DATED this 30th day of June 2008.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE